**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **KSHITIZ GUPTA, *et al*.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MARKWAYNE MULLIN,**[1]<br>*Secretary of the U.S. Department of Homeland Security*, ***et al*.,**<br><br>**Defendants.** | **Case No. 26-cv-00114 (APM)** |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiffs Kshitiz Gupta, He Li, Yixun Li, Xiaoji Xu, Tianyue Yu, and Jing Zhang are foreign nationals who hope to obtain lawful permanent resident status for themselves and their families through the Immigration and Nationality Act's EB-5 investor visa program.[2] After meeting the program's investment requirements, each plaintiff, in 2023, filed a Form I-526E petition. The United States Citizenship and Immigration Service ("USCIS") has since failed to process their petitions, prompting Plaintiffs to file this action seeking to compel their adjudication under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Mandamus Act, 28 U.S.C. § 1361. Defendants move to dismiss, asserting in part that this court lacks subject matter jurisdiction over Plaintiffs' claims under 8 U.S.C. § 1252(a)(2)(B)(ii). For the reasons explained

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes the current Secretary of the U.S. Department of Homeland Security as the defendant in this case.

[2] Plaintiffs Yijie Li and Li Zhao initially joined this action, but their Form I-526E petitions were approved during the pendency of this case. The court therefore dismisses their claims as moot, as agreed by all parties. *See* Defs.' Mot. to Dismiss and Mem. in Supp., ECF No. 18, at 8–10; Pls.' Resp. in Opp'n to Defs.' Mot. to Dismiss, ECF. No. 19, at 1.

below, the court agrees. The court therefore will grant Defendants' Motion to Dismiss, ECF No. 18.

## II. BACKGROUND

### A. Statutory Background

Section 203(b)(5) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1101, *et seq.*, provides visas "to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise" that "will benefit the United States economy by creating full-time employment for not fewer than 10 United States citizens, United States nationals," or certain other residents. 8 U.S.C. § 1153(b)(5). This is called the EB-5 visa program. *See Mirror Lake Vill., LLC v. Wolf*, 971 F.3d 373, 374 (D.C. Cir. 2020).

An applicant may "qualify for an EB-5 visa through . . . the Regional Center Program." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 335 (D.C. Cir. 2023) (citing Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1993, Pub. L. No. 102-395, § 610, 106 Stat. 1828, 1874-75 (1992)). Under that program, EB-5 petitioners "pool[] their investments with 1 or more qualified immigrants" into "a regional center in the United States, which has been designated by the Secretary of Homeland Security on the basis of a proposal for the promotion of economic growth, including prospective job creation and increased domestic capital investment." 8 U.S.C. § 1153(b)(5)(E)(i). Congress has periodically reauthorized the Regional Center Program, most recently through the EB-5 Reform and Integrity Act of 2022 ("RIA"). *See* Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1075 (2022).

Obtaining permanent residency through the EB-5 visa program requires several steps. *See Da Costa*, 80 F.4th at 336. As relevant here, the first step requires an investor to petition USCIS for classification as an approved EB-5 investor using a Form I-526 or Form I-526E petition.

*See id.* The petition "must be accompanied by evidence that the [noncitizen] has invested or is actively in the process of investing lawfully obtained capital in a new commercial enterprise in the United States which will create full-time positions for not fewer than 10 qualifying employees." 8 C.F.R. § 204.6(j).

The RIA provides limited guidance on how USCIS is to process these petitions. It directs the agency to prioritize petitions for "rural areas" but otherwise provides that the Secretary of Homeland Security ("Secretary") "may process petitions in a manner and order established by the Secretary." 8 U.S.C. § 1153(b)(5)(E)(ii). The RIA also "requires the Director of USCIS to adjust fees with a goal of completing adjudications within certain timelines," for example, 120 days for processing a Form I-526E involving an investment in a "targeted employment area," or a high unemployment area. *See Camarena v. Mullin*, No. 26-cv-730 (JDB), 2026 WL 1864155, at *1 (D.D.C. June 29, 2026) (citing 136 Stat. at 1104).

**B. Factual Background**

Plaintiffs are foreign nationals from India and China who wish to immigrate to the United States with their families. Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 37–48. To qualify for an EB-5 visa, each invested $800,000 into a new commercial enterprise in a targeted employment area. *Id.* ¶¶ 28, 31. After making their investments, Plaintiffs each filed I-526E petitions with USCIS between January 19, 2023, and December 5, 2023. *Id.* ¶¶ 4–5, 36–37, 41–43, 46–47. Because USCIS has yet to process these petitions, Plaintiffs filed this suit on January 14, 2026, alleging unreasonable delay. *Id.* ¶¶ 115–34. Plaintiffs seek an order compelling the government to adjudicate their petitions pursuant to the APA, 5 U.S.C. § 701 *et seq.*, and the mandamus statute, 28 U.S.C. § 136, Compl. ¶ 3. At the time of this decision, Plaintiffs' petitions have been pending for more than 35 months.

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and parties can assert the absence of subject matter jurisdiction as a defense to a claim for relief, Fed. R. Civ. P. 12(b)(1). To survive a Rule 12(b)(1) motion, the "plaintiff bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015).

The court "may consider materials outside the pleadings" when resolving a 12(b)(1) motion but must "accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005) (cleaned up). Although there is a strong and well-settled "presumption favoring judicial review of administrative action," particularly in immigration cases, *Kucana v. Holder*, 558 U.S. 233, 251–52 (2010), that presumption may be "overcome by clear and convincing evidence of congressional intent to preclude judicial review," *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (internal quotation marks omitted). If the court determines that it lacks subject matter jurisdiction, it "must dismiss the action." Fed. R. Civ. P. 12(h)(3).

## IV. DISCUSSION

Defendants move to dismiss on two primary grounds. First, under Rule 12(b)(1), they argue that the court lacks subject matter jurisdiction over claims regarding the manner and order in which USCIS processes Form I-526E petitions and, relatedly, that the APA precludes judicial review. *See* Defs.' Mot. to Dismiss and Mem. in Supp., ECF No. 18 [hereinafter Defs.' Mem.], at 10–12. Second, under Rule 12(b)(6), they contend that Plaintiffs fail to make out a claim that the agency has unreasonably delayed adjudicating Plaintiffs' I-526E petitions. *Id.* at 12–20. The court's analysis begins and ends with its jurisdiction.

As relevant here, the INA states that "no court shall have jurisdiction to review. . . any other decision or action of . . . the Secretary of the Homeland Security the authority for which is specified under this subchapter to be in the discretion of . . . the Secretary of the Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii); *see also Kucana*, 558 U.S. at 239 n.3.[3] "'[T]his subchapter' refers to Title 8, Chapter 12, Subchapter II, of the United States Code, codified at 8 U.S.C. §§ 1151–1381 and titled 'Immigration,'" *Kucana*, 558 U.S. at 239 n.3, which includes § 1153(b)(5)(E)(ii), the RIA's EB-5 petition processing provision. To determine whether § 1252(a)(2)(B)(ii) forecloses jurisdiction in this case, the court must examine (1) whether the challenged conduct qualifies as a "decision or action," and if so, (2) whether the decision or action is within the Secretary's discretion. *See iTech U.S., Inc. v. Renaud*, 5 F.4th 59, 62–63 (D.C. Cir. 2021).

The court begins with the first question: whether the challenged conduct—USCIS's failure to timely process Plaintiffs' Form I-526E petitions—is a "decision or action" within the meaning of § 1252(a)(2)(B)(ii). Courts in this District are divided on that precise question. Some have concluded that "establishing a 'manner and order' for processing petitions under 8 U.S.C. § 1153(b)(5)(E)(ii) satisfies the first part of the *iTech* test because decisions about 'the prioritization and pace' of processing Form I-526 petitions 'are "decisions" and "actions leading up to" the final [grant or denial] decision.'" *Camarena*, 2026 WL 1864155 at *3 (quoting *A.M.S. v. Edlow*, No. 25-cv-476 (RDM), 826 F. Supp. 3d 153, 2026 WL 850779, at *10 (D.D.C. Mar. 27, 2026)); *see also Rayan v. Mullin*, 26-cv-824 (TNM), 2026 WL 2823582, at *5 (D.D.C. 2026); *Gupte v. Mullin*, 26-cv-445 (TNM), 2026 WL 2924478, at *4 (D.D.C. 2026). Other courts have

[3] Section 1252(a)(2)(B) also divests jurisdiction as to "any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title." 8 U.S.C. § 1252(a)(2)(B)(i). That provision is not applicable here.

reached the opposite conclusion, observing that an agency's delay in adjudicating a petition is neither an agency "decision" nor "action" but rather "agency inaction," and therefore the provision "poses no bar to judicial review." *See Park v. Edlow*, 26-cv-504 (BAH), 2026 WL 2065339, at *4 (D.D.C. 2026); *see also Liu v. Novak*, 509 F. Supp. 2d 1, 6 (D.D.C. 2007) (so holding as to the failure to timely review an application for adjustment of immigration status). This court agrees with the former view.

The court's conclusion follows from the logic of the Supreme Court's recent decision in *Mullin v. Doe*, 609 U.S. 324 (2026). In *Mullin*, the Court examined the judicial-review bar in the statute establishing Temporary Protected Status ("TPS"), 8 U.S.C. § 1254a(b)(5)(A). The bar forecloses review of "any determination of the [Secretary] with respect to the designation, or termination or extension of a designation." *Id.* at 333. The Secretary had terminated the TPS designations for Syria and Haiti, and the question presented was whether § 1254a(b)(5)(A) foreclosed review of the adequacy of the Secretary's statutorily required consultation with other agencies before making the final termination decision. *Id.* at 338–340. The Court held that review was foreclosed. Looking to dictionary definitions of "determination," the Court explained that the term "may be used as a synonym for 'decision'" and can be "used to describe the chain of events leading up to a decision." *Id.* at 339. Relying on the latter definition, the Court held that the nature of the Secretary's inter-agency consultation was not subject to review because it was "part of the process that led to her final" termination decisions. *Id.* at 339. The majority further rejected the argument that the review bar reaches only the agency's "ultimate 'determination'" as "inconsistent with the plain meaning of the statutory text." *Id.* at 344.

Back to the present case. The court first looks to the ordinary dictionary definitions of the term "decision." They include both the ultimate resolution and the process of reaching it. *See, e.g.,*

Webster's Third New International Dictionary 585 (defs. 1a, 1b) (3d ed. 1993) ("the act of deciding" and "a determination arrived at after consideration"); Random House Webster's Unabridged Dictionary 517 (defs. 1–3) (2d ed. 1997) ("the act or process of deciding," "the act of or need for making up one's mind," and "something that is decided; resolution"); The American Heritage Dictionary 484 (defs. 1–2) (3d ed. 1996) ("[t]he passing of judgment on an issue under consideration," and "[t]he act of reaching a conclusion or making up one's mind"). That latter definition encompasses the decision-making process itself and easily reaches the "manner and order" by which the Secretary processes EB-5 petitions. 8 U.S.C. § 1153(b)(5)(E)(ii).

Viewing the word "decision" in this broad sense is consistent with the D.C. Circuit's decision in *iTech*. There, the court first observed that § 1252(a)(2)(B) is "not a narrowly cabined provision." 5 F.4th at 64. Then, after comparing the text of subsections (i) and (ii), it concluded that subsection (ii) includes more than final determinations on granting or denying relief. *iTech*, 5 F.4th at 63–66. The provision's "breadth," *Rayan*, 2026 WL 2823582, at *3, is buttressed by the statute's bar on review of "*any* other decision *or* action," 8 U.S.C. § 1252(a)(2)(B)(ii) (emphases added). *See Patel v. Garland*, 596 U.S. 328, 338 (2022) (highlighting the "expansive meaning" of the word "any"). So, a "decision" under § 1252(a)(2)(B)(ii) includes *when* the Secretary processes an EB-5 petition. Plaintiffs do not mount any argument to resist this conclusion. *See* Pls.' Resp. in Opp'n to Defs.' Mot., ECF No. 19 [hereinafter Pls.' Opp'n], at 7–12 (arguing only that the timing of an adjudication is not a discretionary act).

The court next turns to the second question: whether § 1153(b)(5)(E)(ii)(II) is sufficiently discretionary to place it within § 1252(a)(2)(B)(ii)'s bar on judicial review. On this question courts in this District are divided, too. Recall § 1153(b)(5)(E)(ii)(II) states that the Secretary "may process petitions in a manner and order established by the Secretary." One court has held that the

provision's use of the word "may" clearly connotes discretion and that, by authorizing the Secretary to process petitions "in a manner and order established by the Secretary," Congress committed the sequence and pace of processing to the Secretary's judgment. *Rayan*, 2026 WL 2823582, at *2–5; *see also Gupte*, 2026 WL 2924478, at *2–4 (same). Another has held that the provision's "solitary use of the word 'may' . . . does not amount to clear and convincing evidence that Congress sought to strip courts of jurisdiction," particularly as the statute imposes some "conditions" on the Secretary's exercise of discretion, including by requiring the Secretary to prioritize rural petitions. *See Camarena*, 2026 WL 1864155, at *3–5. This court is again persuaded by the former view.

Start with the word "may." As the Supreme Court has "repeatedly observed, the word 'may' *clearly* connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (cleaned up). Indeed, that the Secretary "*may* process petitions in a manner and order established by the Secretary"—as opposed to "*shall* process"—permits the agency to deviate from any "established" processes and procedures. Also, "[c]ontext reinforces what the text makes plain." *Id.* at 14. Congress issued commands in neighboring provisions but not in § 1153(b)(5)(E)(ii)(II). Those subsections provide that the Secretary "shall" prioritize petitions for rural areas and "shall deem" certain earlier-filed records to be part of an applicant's petition. 8 U.S.C. §§ 1153(b)(5)(E)(ii)(I), (III). Congress's use of the word "shall" in these instances only reinforces the discretion vested in processing non-rural EB-5 petitions under subsection (II). And, finally, in *Bouarfa*, the Supreme Court observed that several of the provisions listed in § 1252(a)(2)(B)(i), *see* n.3 *supra*, grant discretionary authority to the Attorney General even though they contain conditions on making a final decision. *See Bouarfa*, 604 U.S. at 14–15. No similar constraints are present in

§ 1153(b)(5)(E)(ii)(II). "If the provisions listed in § 1252(a)(2)(B)(i) pertain to discretionary agency determinations, surely § [1153(b)(5)(E)(ii)(II)] does too." *Id.* at 15.

The statute's plain text therefore vests discretion in the Secretary to determine the "manner and order" in which I-526E petitions are processed, and the time taken to adjudicate a petition flows directly from those choices. Petitions that have not yet been adjudicated, like Plaintiffs', sit where they do in the queue because of the Secretary's decisions about which petitions to take up and in what order. And while the provision's requirement to prioritize rural petitions delimits one aspect of the Secretary's choices regarding the manner and order of processing, it does not make the rest of the Secretary's processing decisions any less discretionary. *Cf. Camarena*, 2026 WL 1864155, at *4.

Resisting this outcome, Plaintiffs contend that, "[w]hile the 'manner' and 'order' [of adjudications] may be up to the Secretary to determine, the statute does not give the Secretary authority to determine the *time* in which adjudications should happen." Pls.' Opp'n at 7–8. For support, Plaintiffs point to Section 106 of the RIA, which calls upon the Director of USCIS to conduct a fees study and to set fees to ensure that they cover the costs of "attaining the goal of completing adjudications" of various EB-5-related applications and petitions within enumerated average time intervals. *See id.* at 8–10. But that provision by its plain terms concerns fees and sets only "a *goal* of completing adjudications with certain timelines." 136 Stat. at 1104. Such an "aspirational statement" in no sense constrains the Secretary's processing discretion. *Da Costa*, 80 F.4th at 344; *see also Gupte*, 2026 WL 2924478, at *4 (holding that the RIA's timeline goals are "not enough to overcome the INA's clear grants of discretion").

Plaintiffs' frustrations with the government's delays are understandable. But they object to the manner and order in which the Secretary has elected to process their petitions, and clear

statutory text overcomes the presumption of judicial review over such claims. *See Guerrero-Lasprilla*, 589 U.S. at 229; *Bouarfa*, 604 U.S. at 13. The court therefore lacks jurisdiction to review Plaintiffs' claims and must dismiss without inquiring into their merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (holding that, where jurisdiction "ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause") (quoting *Ex parte McCardle*, 74 U.S. 506, 514 (1868)).

## V. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 18, is granted. A final, appealable order accompanies this Memorandum Opinion.

Dated: November 10, 2026

Amit P. Mehta
United States District Judge